The first case today is 2023-505-37, Mark Miller et al. v. Jane Nelson et al. We'll first hear argument from Ms. Pettit. Thank you, Judge Elrod, and may it please the Court. Notwithstanding the sheer number of provisions at issue, this case is controlled by two principles. First, in order to assure an orderly election, American Party Against White allows Texas to require candidates to show, and I quote, a substantial modicum of support before placing their name on the ballot, a concept that inherently changes with the size of the electorate. And second, to ensure an honest election, Vote.org allows Texas to require physical rather than electronic signatures, particularly when election forms are completed far away from state officials. Where the District Court messed up in applying these principles is when it found that Texas invidiously discriminated among candidates because it required major parties to submit certain information electronically while requiring independents and minor parties to conduct petitions on paper. That is, however, comparing ballots to baseballs. Specifically, the Court relied on Section 172.029A of the Election Code, which requires major parties to submit information regarding who has applied to run for election and ultimately who has won a primary. But that's not what plaintiffs are complaining about. Indeed, as Mr. Ingram explained in his deposition, found at pages 1942 to 43 of the record, minor parties are required to do or suggested to do the same thing, although not technically legally required, and they often choose to submit that information via spreadsheet. Instead, what they are complaining about is what the Court called in White, in Storer, and in Anderson, a single nominating act. That is a signature on a petition that is treated the equivalent as a vote in the primary. What vote specifically would you want us to hold today? We would like you to hold that the Texas, consistent with White, that the Texas system for nominating third parties is constitutional in its entirety. Is a signature on a petition to put someone on the ballot the same as a vote? The Supreme Court has repeatedly held that it is. In fact, I will point your honor to pages 743 of Storer, footnote 29 of Anderson, and page 785 of White. So it's not, I mean, I guess what I'm grappling with candidly is the idea that you sign a petition and that I guess you're equating that to voting in a Democrat primary or the Republican primary. I mean, the voter is free to change party affiliation, change their mind, his or her mind, later on. They don't have to support the eventual Republican nominee. So, I don't know, I guess if it's bound by precedent, it's bound by precedent. I know that's what the state argues on a number of these facets, is that we've either already addressed it or the Supreme Court has and upheld individual provisions. But it does seem a little questionable to me whether just signing a petition to let somebody get on is the same as casting a ballot in the election. The court has addressed that in both the Supreme Court and this court in repeatedly in numerous circumstances and has held that for the purposes of the primary, the voter can be bound within individual election cycles. And I would point the court to the district court in Meyer, which summarized the case law on this point. And it also, for example, in Tadishan and in Rosario, recognized that those two cases were the Supreme Court, recognized that the state, to avoid situations of party raiding, can require a voter within the primary to pick aside and stick with it. Yeah, that's during a primary and a primary runoff, right? And, I mean, Texas, as I apprehend it, does it a lot like Mississippi does, which is what I'm more familiar with. And that is you're not registered as a Republican or an Independent or a Democrat. You show up and you say, I want to vote in the Democratic primary. So today that voter is a Democrat. And they are bound to stay a Democrat in the Democratic primary runoff, right? They can't go and vote in the Republican primary runoff at that point. But in the general election, they're free to do whatever they would like to do. So, I mean, I guess what we're doing is equating this to one vote, one candidate, one party, whether that's libertarian or American constitution by petition or convention or I'm voting in the Republican primary. Exactly, Your Honor. What about the timing? I mean, Texas seems very restrictive on when a voter can sign the petition. The Republican Party and the Democratic Party, those candidates can start running three years before the election. And they've got the machinery there. I know there's probably a qualifying period that they can actually sign up and pay the fee or submit petitions and get on the ballot. But these minor party candidates or Independent candidates are hamstrung. They can't do anything to start their campaign apparatus until after the primary runoff. Not at all, Your Honor. And, in fact, while this — while plaintiffs have insisted that this factor, this what they call the primary screenout, distinguishes from American Party against white, it actually — that's not true. And I would point this Court to pages 780 — 779 to 780 of that opinion, where the Court actually discusses the — for signing of voters participating in another party's nominating process. And that is because the party apparatus that Your Honor mentioned can actually start significantly before they can actually start the petitions. Because the first step is actually — Yeah, but they can't get on the ballot unless they have petitions signed. Kind of hard for a candidate to go out and say, hey, here's this idea, and I'm going to run and da-de-da-de-da. But you've got to wait. You can't vote in either of the party primaries, even though that's all you're going to see campaign-wise running up to the election day. You've got to forego that and then sign this petition and then, hey, if we get enough, I'll get on the ballot. Except the Court has said that that is acceptable in part because the conventions actually predate the petition signing. And this goes to an issue that goes through throughout the party's briefing, where there's repeated conflation of different petition requirements. There are actually three that are at issue in this case. The first is the petition requirement for applying to run at all. And this is true for both major parties and minor parties and independents. And that occurs in early December. And you can start your candidacy before that. There's no requirement that that wait until after the primary. In that one, you get different amounts depending on whether you want to pay the fee. Does that apply in this election, what we're talking about here? I may be the only one here who circulated petitions, but maybe that's not true. So does that apply to this election, that you can get your $200 or you can get your $800 or whatever it is, depending on whether you want to pay fees? Yes, Your Honor. This is a requirement, again, for all candidates who seek to participate in the election. And it is a you can pay a fee or have this circulation process in lieu of the fee. Independent can't circulate a petition, then. They've got to wait until after the Republican and Democratic primaries. That's incorrect, Your Honor. That's a different petition. And that petition is the requirement because there are, again, three different petitions. The first is to apply, which varies, as Judge Elrod pointed out, depending on which election you're running. It could be anywhere from 20,000 to 5,000 petitions. That has to be completed before December 3rd. Then there is a parting of the ways, for lack of a better term. For major parties, they cannot petition anymore. And that's an important point for the district court because if the major party decides, a candidate decides to go that route, it also has to be on paper. But they can no longer petition once they have applied. They have to go through the primary route. Then the smaller parties have a choice. They can either do a convention, which is where they can build up the support that I was trying to talk about with Your Honor earlier before that convention. And if they have at that convention 1% of the total vote for the gubernatorial race, they don't have to petition anymore. They just have to sign at that point. And that's the convention is, I'm gathering from the briefing, it is county level, precinct level, whatever. And so they've got to have 115,000, 120,000 people across the state, not in some amphitheater at one time. Yes, Your Honor. It's across the state. There's got to be an apparatus basically that culminates in a nominating convention. Yes, Your Honor. And before that convention is where they can build that support that Your Honor was talking about a couple of minutes ago. How many precincts are in Texas? I don't know off the top of my head, a couple of thousand. But the issue, if they do not have the full 100,000, or really it's 80,000 because 100,000 is the presidential nomination and it's based on the gubernatorial. So the presidential, if they don't have that number, then they can do a petition to plus up that number to reach the total amount. So that's the option that the minor party has. And then there's a third petitioning option, which is for independents. And there is no convention for them because by definition they are independent. Right. That is what is required to be after the primary. So we have two very, we have three very different petitioning requirements that go on at different times. And it's important not to conflate them as the district court did. And the district court's conflation also brought into the question of Bullock against Carter and the cost of running a petition campaign. Respectfully to my friends on the other side, they are again comparing ballots to baseballs. What happened in Bullock was actually the Democratic nominee who had thousands of votes would have otherwise been qualified to run, except the filing fee was 75 to 90 percent of his salary that he would have gotten if he had won the election. And that functionally made it impossible for people who were not independently wealthy to run for office. The Bullock court specifically said it was not discussing a reasonable filing fee that was, that candidates can be expected to pay out of their own resources or to have reasonable, reasonable fundraising. That is what we have here. The fees are much smaller. The numbers are somewhat similar because of inflation, but the fees as a percentage of the salary are much smaller. Or as Judge Elrod pointed out, there is an option for that earlier petition campaign. Can you— Let me interrupt you. I'm going to quote 1.007C. A delivery, submission, or filing of a document or paper under this code may be made by dot, dot, dot, any other method of transmission. Doesn't that mean that petitions for ballot access can be accepted electronically? They can be emailed. What the problem is and that makes it functionally difficult is that the number of pages that are required make it difficult to PDF and send. What is not allowed to be done electronically and what the plaintiffs would like to be done is collection of that data effectively on an iPad. And nobody votes in a primary in Texas on an iPad. And so that's where we're sort of comparing here is that the petition signature, which is that vote, has to be done in person. And it has to be done with a physical signature. And to the extent the district court's opinion indicates that major parties don't have to use a wet ink, that's wrong. That's correct, Your Honor. So I point Your Honor to the district court was focused on 172.029A. The relevant provision is 172.021B, which requires the petition to follow the same process as a petition by a minor party. Can you get, I'm sorry, this shows an ignorance on my part, but can you bid on different ballots? Can you be the libertarian candidate and the Republican candidate? No, Your Honor, as far as I'm aware, you cannot. Okay. So like in New York, you can be on multiple ballots, I think, and be both. Yes, Your Honor. I believe that was at issue in Timmins. It's called fusion elections, and it's prohibited in 41 states. And I believe in Texas is one of them, although that has not been brought up in this lawsuit. Okay. So but they can have a petition party, right, across the state all on the same day or once a month, or I guess not once a month, once a week or something in December or something, couldn't they? And could gather these petitions. They could, the petitions for the nomination have to occur after the primary. Right. That's what you were talking to Judge Wilson about. Yes. But the original, to get their name out there first. On this, for the original, to get your name out, you can have the parties before December. To get the application petition, you can collect them at parties before December. The only requirement that they're challenging is the requirement for the nominating petition, for lack of a better term, has to occur between the primary and 75 days thereafter. But if someone signs your petition, they're not supposed to vote in the other primary. Correct. It is forbidden. And that is part of the reason why we have the . . . You were talking to Judge Wilson about that, too. So it's not open. It's forbidden, and you could get in trouble, although not many people check or whatever. Yes, Your Honor. If you have voted in a primary and you sign the petition, that later signature is invalid, which is why there is a . . . By petitioning, parties will often bring in far more ballots than are . . . We'd be concerned that it's very difficult even for major party candidates to gather these petitions statewide. And we have challenges to the major party state candidates' petitions because they're considered not to be enough or weren't signed or didn't have the right addresses or whatever. There are constantly challenges to these. So it's very difficult. And so, should that bear on whether we think this is an inappropriate burden? No, Your Honor. And I would point, Your Honor, to the Storer opinion, in particular, page 740, where the Supreme Court said, Standing alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden to run for President. Here, Texas is requiring a third as many signatures in three times as much time. And that is . . . So if it was permissible in Storer, it's permissible here. But it is a little bit arbitrary, isn't it? I mean, I guess collecting the case law, Texas has chosen to say we're going to have a primary screen out, primaries first. Then the universe of non-primary voters can sign petitions. You could do it in reverse where you have petitions beforehand and then you have to screen those voters out in the primary or you invalidate their signatures. I show up and vote Republican after I signed the Constitution Party candidate's petition. And then, so I'm really not an eligible Republican voter, but maybe we just invalidate the petition. Texas has chosen to do it in one order, but I'm guessing maybe both or either order would be okay with the case law, the precedent? It would be, Your Honor, because as this Court noted in Richardson and subsequently in Vote.org, the Texas legislature, under the Constitution, is empowered to run elections, not federal courts. And so they have significant discretion so long as there is no invidious discrimination. As I explained at the beginning of the argument, there is no such discrimination here. And under the case law, this is permissible. Quick question. It doesn't invalidate the petition. It just invalidates that signature on the petition, right? Yes, Your Honor. And you always try to get extras so that in case some are— Absolutely, Your Honor. Okay. Thank you. We save time for rebuttal. Good morning. May I please the Court, Oliver Hall, on behalf of the Plaintiff Cross Appellants. I'd like to begin by clarifying some confusion that we believe permeates the Secretary's briefing and that was repeated here this morning on two critical points. First of all, the suggestion that minor parties and independents can avoid the burdens imposed by the petitioning procedures is incorrect. And second of all, the suggestion that the petitioning procedures burden all candidates equally is also incorrect. So let's start with the first point. Counsel has suggested that minor parties can avoid the petitioning process altogether if they qualify for the ballot by holding nomination conventions. That is, in theory, true. However, the record unequivocally establishes that no party has ever done it in 50 years or more. And so it's really not an option in reality. Counsel opposite said there are a couple thousand precincts in Texas. Do you know how many precincts there are in Texas? I don't, Your Honor, but that sounds accurate. It sounds very low to me. I mean, I guess I think Mississippi had 1,900 voting precincts, and we're a much, much smaller state. I mean, they were way less efficient than Texas in that and other ways. But basically all you've got to do is get a handful of people to show up at each precinct, and you'd be well on the way to having enough people participating, right? That may be true, Your Honor, but the fact remains that it has never been done. The record is clear on that. The fact that it's never been done may just mean that the parties lack support to merit getting on a statewide ballot. No, I would not agree with that conclusion, and the reason is that parties have qualified for the ballot by the petitioning process in the past, but they have not qualified by the convention process. For whatever reason, it may be that it's extremely difficult and unrealistic to require parties to marshal that many people together all on one day. The fact remains it's never been done, and under the past experience test in Storer v. Brown, the Supreme Court has recognized that whether candidates or parties have complied with any particular statute in the past is a reliable indication of whether it is constitutionally or unconstitutionally burdensome, and that's what we have here is a statutory option that no party has ever complied with. Is there anything in the record that suggests your plaintiffs have a measurable quantum of community support, like under the White case? Yes, Your Honor. The record demonstrates that when the Green Party and the Libertarian Party have been able to qualify for the ballot, their candidates have won hundreds of thousands and, in some cases, millions of votes statewide. I'm asking about your plaintiffs. Yes, Your Honor. Those are plaintiffs in this case. Okay. So why wouldn't that cut the other way? Why wouldn't it be outcome determinative that they have ballot access, that they have gotten ballot access? Yes. Thank you for asking. The reason is that the question here is whether the challenge provisions are unconstitutionally burdensome as presently applied, and the fact that these parties have qualified in the past or are presently qualified does not demonstrate that they are able to comply with the challenge provisions as presently applied. The reason in the Libertarian Party case is that the Libertarians last conducted a successful petition drive in 2004. The signature requirement back then was roughly half what it is today, and the evidence shows that the price, the cost of conducting a petition drive has skyrocketed since they qualified. Can you pay for a petition drive expenses with campaign contributions? Not to a—well, it depends on who's conducting the petition drive. If the party itself is conducting a petition drive, contributions to a particular candidate, I don't believe— But what about contributions to a party? They raise money all the time. Yes, that party could use those contributions. I mean, I guess the problem— The candidate used the contributions. Pardon? The candidate can use contributions to do a petition drive. That's a legitimate campaign expense under Texas law, isn't it? Certainly, but the point is that a party cannot use the candidate's contributions. No, that wasn't my question, but a party can certainly raise money. Correct. And a party can use that money to conduct a petition drive. Correct. I mean, I guess this is the problem I've got with the population threshold. You argue in your briefing that, well, it's gone up so much. In 1905, it was 2,000 people. Well, so is the population of Texas. In other words, the universe of potential petition signers has gone up exponentially. I mean, you've got to get 1 percent, right? Well, the reason it's gone up so much is Texas population has gone up I don't know how many percentages, but magnitudes of the increase in the petitions you would get. It's still 1 percent of the overall turnout in the, what, the last gubernatorial election. How's that unconstitutional under the precedent? Under the precedent, the problem is that the signature requirement has increased exponentially, but the time period for collecting those signatures remains fixed. But you mentioned Storer. Doesn't Storer uphold the primary screen out and the time frame that Texas provides? It did not, Your Honor. Storer actually remanded, and following remand, the California legislature, I think, read the writing on the wall and reduced its signature requirement substantially by five times. They read the writing on the wall, but that writing was not in a court opinion saying that the requirements were unconstitutional, was it? Well, the court opinion was we need to remand. This is what the holding in Storer was, contrary to what opposing counsel has suggested. The holding in Storer was this case must be remanded for further proceedings to determine whether the signature requirement is unconstitutionally burdensome. And following remand, the California legislature reduced it by 75 percent or whatever it was, a significant amount. Secondly, well, excuse me, I don't recall the second point I wanted to return to, but let me then just proceed with the main point that we wanted to address in this case, which is . . . Before you do that, check this. As I read the district court's opinion, it states that the major parties can use electronic procedures, quote, as part of their procedures for accessing the ballot, not for petitioning. How do you respond to that? The district court is correct because the major parties place their candidates on the general election ballot by means of primary elections, which are facilitated by means of the electronic procedures that we cite in our brief. The Secretary of State must maintain a database of candidates. The parties are permitted to access that database. They're permitted to submit the candidate's information electronically. None of this sort of electronic procedure is available to minor parties or independents. Now, of course, minor parties or independents nominate by petitioning, not by the primary election process. But the point here is that this petitioning procedure is 120 years old when it was first adopted. And by the way, it relies on centuries-old technology, paper and pen. So what? So what? Just because it's 100-and-something years old doesn't mean it's invalid or infirm. No, but the evidence in the record demonstrates just how inherently inefficient, laborious and cost-intensive it is. It is, it is. But it also, I mean, I go back to my experience in Mississippi law, petition, initiative petitions. They had to be in paper. They had to be wet ink. They had to be verified voters. They had to be actually voters in particular congressional districts. They had to be certified by the circuit clerks. There were a number of other processes. But all those things were designed to make sure that they weren't Mickey Mouse or Mickey Mantle or, you know, other non-voters in Texas who weren't qualified to file the petition. And the state makes an argument that if you just did this on an iPad and it was one of these, like, robo signatures, all those things are swept under the rug or swept away. So what you get in efficiency, you lose in maybe validity. How is that not a legitimate state interest? It may be, Your Honor. But the fact is there is no evidence in the record to suggest that support those assertions made by advising counsel. What's your best case, what's your best case that supports overturning something based on obsolescence? I think, Your Honor, that this case may present a novel issue. But the reason it's a novel issue is that Texas stands alone in the nation in requiring far more signatures in far less time by this obsolete procedure that we are challenging. Isn't it the second largest state in the country? It is. It is. That's why there are more signatures. Do other states have a 1 percent threshold? There are other states that require a 1 percent threshold. Require? No, possibly. Mississippi, I know, for our initiative petitions, we had to get about 120,000, 130,000 signatures to put something on the ballot that's different than a candidate or ballot access. But you're talking about a state one-tenth the size of Texas. Your Honor, it was not in 75 days. Please keep in mind, this is an as-applied-in combination challenge. We are not challenging one procedure based on its obsolescence. We are challenging the overall combined effect of this statutory scheme, which requires that you collect more signatures in a shorter time by means of this inefficient procedure, which requires you to exceed the signature requirement by 50 percent just to ensure you have enough valid signatures. And the combined effect of this is that you cannot get it done as a non-wealthy, independent, or minor party candidate. Counsel, can I ask a couple of clarifying questions? So do you agree that the district court was just mistaken about the electronic versus wedding for the major party when it said that they would allow electronic, that that's just a mistake? And the district court was working under very difficult circumstances and we're not critical of the district court, but that's . . . Your Honor, I didn't read the district court to understand that major parties are permitted to use electronic petitioning. If it did say that, that would be incorrect, right? Everybody can use electronic submission but not petitioning. Is that correct? That's correct. Okay. The difficulty, the problem here, the unequal burden arises from the fact that major parties, major party candidates, they only petition to access the primary ballot, not the general election ballot. To access the primary ballot, major party candidates need no more than 5,000 signatures at most. This is a fraction of what is required of minor party candidates and independents who must collect, in minor parties' case, 83,000 signatures. In independents' case, for president, over 110,000 signatures. In a short period of time, that's the unequal burden that is imposed and that's why opposing counsel is respectfully incorrect to suggest that the petitioning procedures impose an equal burden on all candidates and parties. They simply do not. Major parties never need to conduct the statewide petition drives that impose the prohibitive cost and exclusionary burden on minor parties. That's in the record of how many people participate in the Texas Republican State Convention each cycle, whenever it's done? That's not in the record to my knowledge, Your Honor. Do you happen to know? I mean, are there county precincts, are there precinct caucuses, county caucuses and conventions that feed up into the state convention? There may be. I'm not as versed in the major party convention process. Is that process basically the same as the process that's prescribed by Texas law for minor parties to use, the convention process? It may be. I'm just wondering how many people participate in the Texas Republican precinct caucuses and county caucuses and state conventions each cycle. It's just not in the record, Your Honor, but the difference between these parties is that at the end of the Republican or Democratic Party convention process or primary process, the nominee they select at taxpayer expense is placed on the ballot automatically. For minor parties, they, again, have never been able to qualify for the ballot by having enough attendees at their conventions. They must petition, and they must bear the prohibitive cost of conducting that petition drive. And this is fundamentally what we are challenging in this case. We are not saying that Texas cannot impose a reasonable requirement on minor parties or independents. Of course it can. Texas has legitimate regulatory interests at stake here. What it cannot do, and what the district court got right, is that it cannot erect some of the most restrictive requirements in the entire nation and bar none the most restrictive when it comes to the combination of signatures required and time allowed, and then require the minor parties and independents to follow this procedure that cannot be completed unless you spend a million dollars or more. Even if we were inclined to your argument, aren't we stuck with the Nader case that upheld many of these restrictions? No, Your Honor. In the Nader case, it was a narrow issue. The challenge was brought by an independent candidate for president who alleged that the signature requirement as applied to independent candidates for president was unconstitutional because it was greater than the requirement for minor parties to get on the ballot. It simply did not raise the issues and the claims that we're raising in this case. The court compared the minor party procedures versus the independent candidate procedures and said, well, you know, there are more burdens on minor parties in other instances, so the higher signature requirement for independents is justified. That doesn't even touch on the issues that we're raising in this case. For example, it didn't even touch on the burden and the cost imposed by the petitioning procedure itself. So can you tell us specifically what part of what injunction you wish for us to uphold? What relief do you seek? Yes. We believe that the district court should be upheld insofar as it enjoined enforcement of the challenge procedures and the petitioning procedures in particular. All the procedures or just the petitioning procedures? All the procedures insofar as they contemplate the petitioning procedure that we are challenging. But again, and then we request that the court be reversed and remanded insofar as it upheld the other challenge procedures. This claim that we are asserting is an as-applied, in-combination challenge. And just to address remedy briefly, the Secretary of State has averred that the district court has improperly attempted to compel the legislature to adopt electronic petitioning. That's incorrect. If the district court had actually attempted to compel the legislature to do something, we would be arguing about that. The district court did not do so. The district court merely enjoined enforcement of these challenge provisions insofar as they require a paper nominating petition process. Now, in response, the legislature has unfettered discretion to enact any remedy that it considers appropriate and necessary to address the district court decision. That could involve adopting a new petitioning procedure, and that would certainly be warranted given the Secretary of State's admission that they have never considered whether other alternatives may be better suited to the state's regulatory interests. But the district court, the Secretary of State, or the legislature could also determine that it would be much simpler to require a less severe modicum of support. Is it really the paper requirement that's their big issue, or is it the number? Because you're talking a lot about the paper, but how is it at all appropriate for a federal court to weigh in whether states should be using paper or electronics? I mean, I think that just in the news we know that some states have said, oh, people got upset with the electronic ballots and said we need paper receipts and we want our own for voting. And people are all over the place regarding whether they want to use electronic or paper and whether paper is more legitimate in some way in the eyes of some voters or legislators. So why would it be appropriate for us to say as a constitutional matter the Constitution requires electronic? And again, Your Honor, the district court did not say that. The district court enjoined the challenge provisions insofar as they require this procedure. But the remedy that the legislature seeks to adopt to address the district court decision is up to the legislature. Like what? What are the options? If you throw out paper, what do you envision? Well, first of all, the legislature could reduce the signature requirement, and then — That has nothing to do with paper versus electronic. No, but the constitutional analysis would change because this is an as-applied — No, no, no. I'm just saying in the district court's relief, no more paper signatures, no more wet ink signatures. What are the legislature's options if we throw that out? The legislature's options are to reduce the signature requirement. You're wanting to revisit the whole statutory scheme, but that's not what the district court ordered. But if the legislature took any number of remedial steps, it would then require a new constitutional analysis. It may be constitutional to require a smaller number of signatures in a longer period of time as most other states do, and then the petitioning procedure wouldn't be so unconstitutionally burdensome. That's the nature of this as-applied in combination challenge, and that's why the legislature truly does have unfettered discretion to address this district court decision. Well, they don't because they can't require paper petitions or wet ink signatures under the district court's relief. Your Honor, I disagree because the constitutional analysis would change if— Then I'm struggling to know what the district court ordered. Excuse me? I'm struggling to know what the district court ordered then. Your Honor, I think what the district court did was recognize that under this statutory scheme, something has to give. We have a circumstance where no successful statewide petition has been conducted in nearly 20 years. Between 2010 and 2016, two out of 122 independent candidates succeeded in their petition drives. That's a 98.4 percent failure rate. The district court correctly recognized that you cannot have a procedure that makes it all but impossible for any non-wealthy candidate or party to comply with the requirements involved. So the district court, in its injunctive relief, focused on the procedure, but any number of these— But the district court focused on paper. On the paper petitioning procedure. To the extent they require a paper petitioning process impose unequal burdens on plaintiffs in violation of the Equal Protection Clause. That's what the district court did was just paper. Correct. District court upheld everything else that—I mean, I understand your arguments about the rest of them on cross-appeal, but all the district court did in its relief was say you can't use paper. That's correct. But you say that opens the door for the legislature to revisit the entire scheme. It does. Well, I mean, they could do that anyway. That's their policy prerogative. What the legislature is now facing is a district court decision holding that these provisions are unconstitutional as applied and joining enforcement of them insofar as they require this paper procedure. But the legislature could determine that a better way of remedying this unconstitutional statutory scheme is to address the substantive requirements as Your Honor, Judge Elrod suggested. They may decide that we don't need to require so many signatures in such a short period of time. In fact, the evidence here on the record shows that any state that's required as few as 5,000 signatures has never had more than eight candidates on the ballot. Now, we're not suggesting that Texas should reduce its signature requirement to 5,000. Texas is a big state. Perhaps a higher signature requirement is warranted. But the evidence shows that the signature requirements imposed now are far in excess of what is necessary to protect the state's regulatory interests. And the legislature could choose to address that aspect of the case in its remedy. Let me ask you one more question. I know you're out of time, but I'm not. When this law was passed almost 200 years ago, the signatures required to represent 1% was less than 3,000. It's now over 100,000. Is there a threshold number when it becomes an unreasonable burden? It depends on each case. And the reason it depends on each case is that different states have vastly disparate requirements. And that's why the challenge here is as applied in combination. It depends on how much time you have. Again, Republicans and Democrats have over two and a half years to collect the small number of signatures they need. Minor parties and independents have just 75 days roughly for independents to collect 80,000 or 100,000 signatures. There's no litmus test. There's no flat answer as to what is permissible and what is not permissible in any given case. It depends on the other factors and the other requirements imposed by the statutory scheme. Thank you. We have your argument, Mr. Hall. Thank you very much. Thank you. I would like to start with my friend on the other side's admission that the district court was wrong and that major parties and minor parties are treated equally for the purposes of what is electronic and what is on paper. Under vote.org, under those circumstances, we are under rational basis review, and it is not our evidence and not our burden to show that this is justified, but theirs to show that it is not justified. And he has commented repeatedly on the lack of evidentiary support. I would look to their own evidence. At page 788 of the record on appeal, Mr. Verney admitted that there is a preference to use volunteer or in-house circulators precisely because hired circulators are likely to forge signatures because they are, or to make up signatures because they are financially incentivized to do so. This court's sister circuit in Lemons v. Bradbury noted the same phenomenon on page 1104. So under those circumstances, the state has an interest that is legitimate in the words of vote.org, if not dramatic, to require physical signatures because they provide some evidence that the voter is who they say they are, which is a fundamental premise of all voting regulations. Turning then to the question of unequal burdens. I would point, Your Honor, Judge Elrod, to the Kirk case instead of the Nader case, which was looking at the American Party against White in 1996 and said that the only significant change by that point was that the primary had been moved earlier, so the deadlines had been moved earlier. The only change since Kirk that is pertinent to this case actually occurred in 2019 to make it easier for the plaintiffs to retain ballot access. Before then, in Once You Have, and he made a number of points about how independent parties or small parties had not successfully mounted a petition campaign in 20 years. They have not had to. Because Once You Have done the petition campaign once, you retain ballot access so long as you have, before 2019, 5% of the total gubernatorial vote in the last election. In 2018, the Green Party failed to meet that threshold, and rather than allow them to be dropped off the ballot, the Texas legislature reduced the requirement. So it's 2%. They don't have to meet the requirement. That's why nobody has done it in 20 years. And Judge Wilson, you asked if there was evidence in the record about how many people participate in the Republican Convention every year. There's not, but we do know how many participated in the American Party's convention on page 550, and that's 10. And we know how many members the Constitutional Party had, and that's on page 565, and that's 130. If every political club with 10 members or 130 members in Texas can put their preferred candidate on the ballot, what is already a lengthy ballot would become entirely unwieldy. And that is precisely why we have this petitioning requirement. And I would point the court to page 440 of Jeunesse, where in terms of unequal burden, the court expressly rejected the premise that it is inherently harder to get in that court, within that case, 3 to 5% of the relevant electorate to sign a petition than to run a primary. As Your Honor knows and as Judge Elrod knows, running an election is a time-intensive, unpleasant process, and there is just no way to eliminate all of the burden. The question is whether there is an analogous burden for major parties and minor parties, and as this court held in Kirk, there is. Turning to the question then about, and I'll close with this point probably unless there are further questions about Storer, my opposing counsel made a big deal that the California legislature saw the writing on the wall and reduced by 75%. But what they were reducing from that he neglected to mention was 5% to 1%, the 1% that Texas has required for 100 years, and that the Williams case, which is perhaps the best case for my opposing counsel's position, actually recognized on page 33 was very low. The 1% is entirely reasonable. And I will actually make one more point about the remedy discussion that Your Honors were having with my friend. The reason why he had so much trouble articulating what it is that he wants is that while he repeatedly called it, and I believe he said an as-applied, in-combination challenge, that is not what this case is. It is as applied to independent parties. Well, by definition, these provisions only apply to independent parties, and so therefore it is a facial challenge in all but name. And he is asking this court to blow up every provision that is applicable to third-party and independent nominations all at the same time or to act as the Texas legislature and pick and choose. That is not the role of the federal courts, and we respectfully suggest that you not do so. Thank you. We have your argument.